IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMICA SMITHSON, )<br>    Plaintiff, )<br> )<br>vs. )<br> )<br> )<br>CHRISTOPHER C. MILLER, )<br>ACTING UNITED STATES SECRETARY OF )<br>DEFENSE, DEPARTMENT OF )<br>DEFENSE, )<br>    Defendant. ) | CASE NO.: 1:20-cv-3021 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action brought by Plaintiff, Tamica Smithson, by counsel, against Defendant Christopher C. Miller, Acting United States Secretary of Defense, Department of Defense ("Defendant"), for its discriminatory and retaliatory actions, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq.

### I. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 USC §1331, §1343; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII") and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq. ("Section 501").

2. Plaintiff filed an EEO Complaint with the Defendant in April 2018. On August 21, 2020, Defendant issued a Final Agency Decision ("FAD"). This civil filing is within ninety (90) days of Plaintiff's receipt of the FAD.

1

3. Venue is proper in the Southern District of Indiana, Indianapolis, Division, as Plaintiff's home state is Indianapolis, Indiana, and she "resides" within the jurisdiction of the United States District Court for the Southern District of Indiana.

## II. PARTIES

4. Plaintiff, Tamica Smithson ("Smithson"), is an employee of the United States Department of Defense Education Activity ("DoDEA") office, a division of the Department of Defense.

5. Defendant, Christopher C. Miller is the current Interim/Acting United States Secretary of the Department of Defense.

6. Defendant Department of Defense oversees and manages the DoDEA. The DoDEA is a field activity office that is responsible for managing K-12 educational programs for students of military families that are based outside of the United States.

## III. FACTUAL ALLEGATIONS

7. Smithson, an African-American woman, was hired by the DoDEA in 2004 and remained an employee at all relevant times.

8. Smithson's home place of residence is Indianapolis, Indiana.

9. Smithson was employed as a Secondary Science Educator and was assigned to Vilseck High School in Bavaria, Germany.

10. Smithson met or exceeded her employer's legitimate performance expectations.

11. At all relevant times, Smithson was the only African-American teacher in the science department.

12. For several years, Smithson routinely taught a combination of biology, chemistry, and advanced placement biology.

13. In June 2017, Smithson was notified that she was going to be removed from teaching her two upper level chemistry classes, as those classes were being reassigned to a Caucasian male teacher, with less seniority.

14. Smithson's preparation periods were also decreased, making her have less prep time than any other teacher in the science department.  Smithson was the only teacher assigned to teach a single course.

15. After Smithson complained about the disparate treatment, one chemistry class was returned to her.

16. In October 2017, a Caucasian male school counselor refused to place an African-American student in Smithson's class, informing the student that he needed to take a "real" chemistry class.

17. The school counselor suggested that the student be placed in the Caucasian male's chemistry class, implying Smithson was not a real chemistry teacher.

18. From January 2018 until April 2018, Smithson had several incidents with Caucasian teachers, where teachers would "accidentally" bump into her, or "accidentally" slam the door on her.

19. In one particular incident, a Caucasian staff member snatched a desk/chair out of Smithson's hands in front of several of her colleagues, resulting in an injury to Smithson's leg. The incident was so aggressive and outrageous that Smithson began crying and had to leave the room to gather herself.

20. Smithson brought these incidents to the attention of the Hispanic/Caucasian Principal, but he refused to intervene or take any action to address the harassment targeted at Smithson.

21. Smithson also suffered from various disabilities.

22. During the 2009/2010 school year, Smithson requested and was approved for a reasonable accommodation.

23. The reasonable accommodation allowed Smithson to work a flexible schedule, wherein she was not assigned a 1st period preparation, and she would report to work before her first class was in session.

24. This accommodation kept the school from having to hire a substitute teacher, it allowed Smithson to perform the essential functions of her position, and it resulted in Smithson taking significantly less sick time off work.

25. Smithson's accommodation stayed in effect from 2010 until 2018.

26. In November 2017, Smithson requested assistive technology as an aid to assist her with teaching while disabled. A Caucasian teacher already had the same assistive technology and was able to acquire it without inconvenience or hassle.

27. When Smithson requested the same technology, it caused a review of her reasonable accommodation plan, it resulted in quite the hassle, and Smithson's response from the school was negatively different than her Caucasian counterpart.

28. In April 2018, Smithson was informed that her reasonable accommodation plan was being reevaluated.

29. Prior to this reevaluation, Smithson had filed complaints of discrimination.

30. Smithson was informed by the Caucasian Principal that she never should have been granted the reasonable accommodation of working a flexible or alternative schedule.

31. In response to the reevaluation, Smithson submitted medical documentation that supported her continued need for the existing accommodation.

32. Despite the documentation, Smithson's accommodations were changed, and she was required to use her sick/personal leave time to cover any time in which she needed to use her accommodation.

33. Defendant knew that Smithson needed the accommodation daily.

34. Smithson was then required to use a half day of leave time, even though she only needed a couple of hours in the morning as an accommodation.

35. Defendant then changed its leave policy to comport with the new requirement it had imposed on Smithson. It made a requirement that all teachers had to use a minimum of half day for any sick/personal time.

36. Smithson was required to call in daily and report her use of an accommodation, and she was forced to take a half day of sick leave.

37. Defendant's actions were meant to force Smithson to use all of her leave time and/or resign.

38. During school, Smithson's migraine, stress, and blood pressure levels were so high that she was rushed to the hospital.

39. In December 2018, Smithson was informed that she was no longer able to report to work on days she used her accommodation, and that she needed to prepare a lesson plan for a substitute teacher, even though Smithson was able and willing to perform the essential functions of her position, with a reasonable accommodation.

40. In 2018, Smithson also discovered that her private health information had not been protected, as Defendant had failed to secure it in a separate location from her personnel file.

IV. LEGAL ALLEGATIONS

COUNT I- RACE DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT

41. Plaintiff hereby incorporates by reference and repleads all allegations set forth in paragraphs 1-40.

42. Defendant violated Title VII when it treated Plaintiff less favorably than similarly situated Caucasian employees.

43. Defendant violated Title VII by subjecting Plaintiff to different terms and conditions of employment.

44. Defendant's discriminatory actions were based on Plaintiff's race.

45. Defendant's actions were intentional, willful, and taken in reckless disregard of her legal rights as protected by Title VII.

46. Plaintiff has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

COUNT II- RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
AND 501 OF THE REHABILITATION ACT

47. Plaintiff hereby incorporates by reference and repleads all allegations set forth in paragraphs 1-46.

48. Plaintiff engaged in protected activity when she filed prior complaints of discrimination against Defendant.

49. Defendant retaliated against Plaintiff when its representative and/or agent subjected her to harassment and failed to address her complaints of discrimination.

50. Defendant retaliated against Plaintiff when it required her to take extra steps to get any assistance, steps that were not required of her Caucasian counterparts.

51. Defendant retaliated against Plaintiff when it arbitrarily changed her accommodations.

52. Defendant's actions were intentional, willful, and taken in reckless disregard of Plaintiff's right to be free from retaliation.

53. Plaintiff has and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT III- HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF TITLE VII

54. Plaintiff hereby incorporates by reference and repleads all allegations set forth in paragraphs 1-53.

55. Defendant subjected Plaintiff to a hostile work environment when it subjected her to severe or pervasive harassment.

56. Defendant subjected Plaintiff to a hostile work environment when it failed to address her complaints of discrimination.

57. Plaintiff has and continues to suffer harm as a result of Defendant's unlawful actions

### COUNT IV- DISABILITY DISCRIMINATION IN VIOLATION OF SECTION 501 OF THE REHABILITATION ACT OF 1973

58. Plaintiff hereby incorporates by reference and repleads all allegations set forth in paragraphs 1-57.

59. Plaintiff is a qualified individual with a disability.

60. Defendant discriminated against Plaintiff when it failed to protect her private health information.

61. Defendant discriminated against Plaintiff when it failed to reasonably accommodate her disability.

62. Defendant discriminated against Plaintiff when it harassed her because of her disability.

63. Defendant discriminated against Plaintiff when it subjected her to a higher level of scrutiny for accommodation requests.

64. Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Tamica Smithson, by counsel, does hereby request the following as relief:

1. Enter judgment in favor of Plaintiff;

2. Award lost wages, front pay, and associated benefits due to the denial of Plaintiff's statutory rights;

3. Award compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions.

4. Award compensatory damages;

5. Award liquidated damages;

6. Return all sick leave used as of the date original accommodation was rescinded;

7. Award all costs and attorney's fees incurred as a result of pursing this action;

8. Award pre- and post-judgment interest in all sums recoverable; and

9. Award all other legal and/or equitable relief this Court deems just and proper.

Respectfully submitted,
CURLIN & CLAY LAW,
ASSOCIATION OF ATTORNEYS

*s/Robin C. Clay*

_____
Robin C. Clay, 22734-49
8510 Evergreen Ave. Suite 200
Indianapolis, IN  46240
Telephone (317) 202-0301


        Facsimile (317) 282-0688
        E-mail: rclay@curlinclaylaw.com

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a jury trial as to all issued deemed triable.

        Respectfully submitted,
        CURLIN & CLAY LAW,
        ASSOCIATION OF ATTORNEYS

        *s/Robin C. Clay*
        _____
        Robin C. Clay, 22734-49
        8510 Evergreen Ave. Suite 200
        Indianapolis, IN  46240
        Telephone (317) 202-0301
        Facsimile (317) 282-0688
        E-mail: rclay@curlinclaylaw.com